BERNARD *v.* MICHIGAN UNITED TRACTION CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION—NOTICE.
  Until notice of the intention of any employer to take ad-
  vantage of the workmen's compensation act has been filed
  with, and accepted by, the Accident Board (Act No. 10,
  Extra Session 1912), an employer is not brought within
  its protection; notwithstanding that the servant injured
  may have made declarations or accepted compensation
  as fixed by the statute.

Certiorari to Jackson; Parkinson, J.    Submitted
June 9, 1915.    (Docket No. 32.)    Decided October 29,
1915.

Case by Charles N. Bernard against the Michigan
United Traction Company for personal injuries. Judg-
ment for plaintiff. Defendant brings error. Af-
firmed.

*Price & Whiting,* for plaintiff.

*Sanford W. Ladd* (*Warren, Cady, Ladd & Hill,* of
counsel), for defendant.

MOORE, J. The questions involved in this proceed-
ing are so clearly stated by the circuit judge in his
direction to the jury that we quote freely from it as
follows:

"The plaintiff in this suit, Mr. Bernard, has brought
it claiming he is entitled to recover from the defendant
company because of negligence causing personal in-
juries to him. The defendant has interposed a plea
to the jurisdiction of this court. This denial of juris-
diction in this court to entertain this case is based on
two claims practically, as I understand it: *First,* that
regardless of anything the plaintiff did under the facts
of this case, the plaintiff cannot maintain his suit in
this court, but that his rights and his remedies are

under Act No. 10 of the Public Acts of the Special Session of 1912. *Second,* that the plaintiff, by signing Exhibit F, Exhibit M, and Exhibit N, and giving one to Mr. Kleinstiver, which was afterwards sent to the Industrial Accident Board at Lansing, has voluntarily placed himself under the provisions of that act, and is bound by his action as an irrevocable choice and must abide by it, and hence cannot now prosecute this suit.

"Act No. 10 of the Special Session of 1912 took effect from and after September 1, 1912. I believe the defendant company made its election to come under the provisions of that act September 7, 1912, but notice of such election was not received and filed by the Industrial Accident Board until September 9, 1912. That Industrial Accident Board did not approve of this election on the part of the company until November 20, 1912, and after that date the notices required by the act were posted by the railroad company.

"The accident to the plaintiff occurred on the 12th day of November, 1912, 8 days before the action of the board approving the election made by the railroad company. September 13, 1912, the board wrote the company for information as to its financial responsibility, and again on the same subject on November 7th, saying in the latter letter that the former one had not been replied to, and this board was withholding action because of defendant's delay.

"By section 1 of part 4 of this Act No. 10, employers had the right to choose one of four ways of paying in case of accident. The railroad company chose the first, that of paying direct to its injured employees. Such right so to specify was subject to the approval of the Industrial Accident Board. And to secure such approval the board requires satisfactory proof of the solvency and financial ability of the company. This it finally had, and on November 20th approved of the application and election of the company.

"The defendant in support of its plea to the jurisdiction says: *First,* irrespective of any act of plaintiff in recognition of Act No. 10 of 1912, he is subject to it and cannot maintain this suit; *second,* if not, then his positive action in signing Exhibit F, December 3, 1912, and delivering a duplicate to Mr. Kleinstiver, and which was sent to Lansing, was an adoption of the act of the legislature in question, and an election to

avail himself of it, from which he could not recede, or which he could not thereafter repudiate. These claims on the part of the defendant the plaintiff denies. These antagonistic claims require from this court a construction of this act of the legislature so far as is necessary to determine the questions at issue.

"Section 1 of that act, in reference to suits for personal injuries, takes away three defenses that before existed, unless, as to railroad companies, they had before been taken away or modified by Act 104 of 1909.

"Section 3 of part 1 reads as follows: 'The provisions of section 1'—which you will remember I stated before, takes away certain defenses that before existed —'shall not apply to actions to recover damages for the death of, or for personal injuries sustained by, employees of any employer who has elected, with the approval of the Industrial Accident Board hereinafter created, to pay compensation in the manner and to the extent hereinafter provided.' In that section it says that section 1 shall not apply to those who elect to come under this act and whose election is approved; couples the two things, the employer who has elected and approval on the part of the Industrial Accident Board.

"Section 4 uses substantially the same language: 'Any employer who has elected, with the approval of the Industrial Accident Board hereinafter created, to pay compensation as hereinafter provided, shall not be subject to the provisions of section one.'

"I think, to exempt the employer from the liabilities or responsibilities imposed by section 1, it is necessary that the employer have elected and that there should have been the approval of the Industrial Accident Board. So I am inclined to think that the action of the employer—in this case, the railroad company— its rights, as well as obligations, are not completed until it has not only made its election, but that it has had the approval of the Industrial Accident Board. By those two sections, those things go together. The status of the company does not seem to be completed or fixed without the two concurring actions, the election on the part of the company and the approval of the Industrial Accident Board.

"Section 5 says: 'The following shall constitute employers subject to the provisions of this act.' I omit subdivision 1 which has no application. Subdivision 2 says: 'Every person, firm and private corporation, including any public service corporation,' and the defendant company is a public service corporation, 'who has any person in service under any contract of hire, express or implied, oral or written, and who, at or prior to the time of the accident to the employee for which compensation under this act may be claimed, shall, in the manner provided in the next section, have elected to become subject to the provisions of this act, and who shall not, prior to such accident, have effected a withdrawal of such election, in the manner provided in the next section.' Now, that section or division of section applies to employers and to persons who have met with an accident, and seems to convey the meaning that the election should have been had prior to the accident. The election in this case, if that is all there is of it, was prior to this accident as far as that is concerned, but that election had not been approved; it had not become effective at the time of the accident. And I am inclined to think that the meaning of that subdivision 2 refers to the election made prior to the accident and the election that has become complete and in force by the approval of the Industrial Accident Board.

"Section 6 of part 1 provides, first, as to the way in which the election shall be made out, and says that in making it out the employer shall accept the provisions of this act, and that he adopts subject to the approval of said board one of the four methods provided. So that act is subject to the approval of the Industrial Accident Board. And it reads: 'The filing of such statement and the approval of said board shall operate, within the meaning of the preceding section, to subject such employer to the provisions of this act and all acts amendatory thereof.'

"For the moment I stop there. But it is the filing of the statement and the approval of the Industrial Accident Board that subjects the employer to the provisions of the act, and it seems to require the concurrence of those two things to complete the subjection of the employer to the provisions of the act. There is

a proviso in this connection: 'Provided, however, that such employer so electing to become subject to the provisions of this act shall, within ten days after the approval by said board of his election, filed as aforesaid, post in a conspicuous place in his plant, shop, mine or place of work, or if such employer be a transportation company, at its several stations and docks, notice in the form as prescribed and furnished by the Industrial Accident Board to the effect that he accepts and will be bound by the provisions of this act.' It seems to be plainly a part of the scheme and plan of this act that there shall be notice within 10 days after the election is approved, so that employees of the company, who are the other parties interested, shall have knowledge that their employer has elected to come under this law, and therefore that thereafter their remedies if they are hurt will be afforded under this law if they subject themselves to it. And I think it is a part of the scheme of the law they may exercise choice whether they will avail themselves of the rights this law affords or remain subject to the other laws governing the situation.

"While by the provisions of the section it is the filing of the statement and the approval of the board that operates to place the employer under the act, the proviso says such employer so electing to become subject to the provisions of this act within 10 days after approval shall give notice. Now that seems very plain that they are not to give notice to their employees until after their election has been approved, and I do not find anywhere in the scheme of this act anything to indicate that the employees ought to find out what the employer is doing until the thing he is doing has become fixed and completed, when the duty then rests upon the employer to give them notice in the manner specified.

"The sections preceding section 7 relate, for the most part, to the employer. Sections 7 and 8, being the remainder of part 1, relate mainly to the employee. Section 8 reads as follows:,

" 'Any employee as defined in subdivision one of the preceding section shall be subject to the provisions of this act and of any act amendatory thereof. Any employee as defined in subdivision two of the preceding

section shall be deemed to have accepted and shall be subject to the provisions of this act and of any act amendatory thereof if, at the time of the accident upon which liability is claimed:

" '1. The employer charged with such liability is subject to the provisions of this act, whether the employee has actual notice thereof or not; and

" '2. Such employee shall not, at the time of entering into his contract of hire, express or implied, with such employer, have given to his employer notice in writing that he elects not to be subject to the provisions of this act; or, in the event that such contract of hire was made before such employer became subject to the provisions of this act, such employee shall have given to his employer notice in writing that he elects not to be subject to such provisions, or without giving either of such notices shall have remained in the service of such employer for thirty days after the employer has filed with said board an election to be subject to the terms of this act.'

"That is sufficient for this purpose. Section 8, in its first paragraph, uses the language, 'if at the time of the accident upon which liability is claimed,' the employer is subject to the act and the employee is subject to the act, to make it short. The employee becomes subject to the act if he is employed after the time that the master or employer has elected to come under the act and has not given notice in writing that he elects not to be subject to it, but if the employee is already in the employer's service when the employer comes under the act, then if he remains for 30 days and does nothing, he shall be presumed to choose to be under the act. This language is, 'thirty days after the employer has filed the election.' They filed this election on the 9th of September, and this accident was on the 12th of November, and more than 30 days elapsed between the filing by the employer and the accident, but the board did not approve of this act of the company until 8 days after the accident.

"It is insisted here that the 30 days began to run from the filing with the Industrial Board, which was on September 9th. Yet, until after the Industrial Board acts there is no provision for any notice to the employee whatsoever, so they have got to act within

30 days, if that rule is correct, as to something of which they have no notice or knowledge whatever, unless they get it by accident, or unless the employee is bound to watch the offices up at Lansing to find out what his employer is doing with reference to this act. That renders, so far as this situation is concerned, practically useless all provisions about giving notice. As to the act of filing the application or election with the Industrial Accident Board, there is no provision for any notice. I do not see the way the employees could get notice until the employer is actually under the law, but it is claimed, if I may say so at this point, that as applied to this case when the application is filed with the board on September 9th, and is approved November 20th, then it relates back—the completion of so being under the act relates back to September 9th, and puts everything under the act from September 9th. And if that is so, the employees come under the act without knowing it or having any chance to give written notice that they do not want to come in under the act. * * * But it seems to me an essential part of the scheme of the act that the employee have the right of choice. This implies, first, actual or constructive notice of the employer's election and actual submission to the law, and then the right on the part of the employee to choose by giving written notice or abstaining from it. Robbed of this opportunity, he is practically deprived of the right; and, if this is the real meaning of the statute, it is oppressive, an invasion and deprivation of individual right, and hardly to be tolerated or enforced. If I must so construe it, I am certainly reluctant to pronounce it valid as to those provisions. My inclination is to harmonize as far as possible every part with the general purpose of the act and without violating what seems to be the plain rights of the employees.

"Now the only question that confronts me, and as to which I feel some difficulty, is whether I ought to leave it to the jury to say and express by its verdict its judgment as to what took place between the company and this man while he was at the hospital. He signed the papers here (Exhibit F, Exhibit M, and Exhibit N) that have been shown in evidence, making application for his pay under this act. It is claimed that he did not know what his legal rights were at that

time, and that he afterwards refused to go ahead and consummate that arrangement after he had been informed in respect to his rights. It is claimed the company went on and made some payments in reliance upon his election to come under this act, and payments that under the law the company would not have been required to make.  *  *  *  This was not any act on the part of the plaintiff in trying to repudiate or annul anything he did before the accident. His relation to the employer was what it was; and, so far as this suit is concerned, he had rights or did not have rights at the very time of the accident. I mean so far as the law itself and its operation are concerned. If he was not, under all the circumstances, subject to this act, has he put himself in a position by what he did at the hospital on December 3d, and his delay in notifying to the contrary so that he cannot recede from it? Has he become bound to abide by the remedies of this statute, and are they as to him his exclusive remedies? With some misgivings I have concluded to hold that he has not placed himself in such a position, and that, if he was not under this law by virtue of its own operation, in view of what the employer has done, he was at the time of the commencement of this suit free to resort to the remedy which he did invoke by launching this proceeding."

The appellant argues here, as it did below, that the jurisdiction of the Jackson circuit court is barred in this action by the employers' liability and workmen's compensation act (Act No. 10, Pub. Acts 1912), and quotes freely from the act, and cites cases in support of its contention. We have examined these cases with care, and are not satisfied they are controlling. The question of notice has had the attention of this court in the recent case of *Mackin* v. *Axle Co.,* 187 Mich. 8 (153 N. W. 49), where we reached a different view upon the question of notice from that entertained by the circuit judge. It is not necessary to repeat what was there stated. The case in some of its aspects is one of first impression in this State. The statute works a radical change in the legal relations between em-

ployer and employed. It ought to be so construed that each of them may know when the new status is created. In the construction given the statute by the circuit judge as to the necessity of approval by the Accident Board this is done, and we are satisfied with that construction.

The remaining question is, Did the court err in not submitting to the jury the question of whether by his acts subsequent to the accident plaintiff brought himself within the act? We are satisfied that if a new status was created between these parties, it must be by virtue of the terms of the statute. If defendant has paid out sums of money relying upon the acts of the plaintiff, this can be taken care of in a new trial upon the merits.

Judgment of the court below is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.

The late Justice McALVAY took no part in this decision.