FARMERS' PETROLEUM CO. et al. v.
SHELTON. (No. 331.)

(Court of Civil Appeals of Texas. Beaumont.
March 11, 1918. Rehearing Denied
April 3, 1918.)

1. MASTER AND SERVANT ☞358—WORKMEN'S COMPENSATION—SUBSCRIBER TO ACT — NOTICE TO EMPLOYÉ.

The notice to employé prescribed by Vernon's Sayles' Ann. Civ. St. arts. 5246i, 5246x, 5246xx, creates the relation of subscriber employer and employé, such act being mandatory, and requiring the actual giving of written or printed notice by employer to employé.

2. MASTER AND SERVANT ☞405(3)—EMPLOYERS' LIABILITY ACT—ACCEPTANCE BY EMPLOYER—NOTICE—EVIDENCE.

Evidence, in an action against master for personal injury, held to support findings of the jury to the effect that the plaintiff had not received actual notice of defendant's acceptance of the provisions of Employers' Liability Law,

Acts 33d Leg. c. 179 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246a–5246zzzz).

3. APPEAL AND ERROR ☞1050(1) — MASTER AND SERVANT ☞404—COMPENSATION ACT— NOTICE OF ACCEPTANCE—EVIDENCE — HARMLESS ERROR.

In an action by servant against master for personal injuries, the testimony of plaintiff that notices required by Employers' Liability Law were not posted at defendant's well, at a date eight months after defendant's injury, was admissible where such notices were in writing, the question of their ever having been posted having been made an issue, but, if error, it was harmless, where plaintiff, when called in rebuttal, testified to the same facts without objection.

4. MASTER AND SERVANT ☞279(5) — INJURY TO SERVANT — NEGLIGENCE OF VICE PRINCIPAL—SUFFICIENCY OF EVIDENCE.

Evidence held to sustain findings of jury that the negligence of defendant's vice principal in handling a rope and pipe was the proximate cause of a servant's injury.

5. DAMAGES ☞132(8) — EXCESSIVE DAMAGES —PERMANENT INJURY TO ARM.

Where a servant was a healthy man of 29 years, earning $90 a month, and had his right hand and arm to elbow crushed and rendered worthless, was confined to the hospital four months, undergoing three operations, at cost of $1,000, a verdict of $15,000 will not be reversed as excessive.

6. APPEAL AND ERROR ☞880(1) — REVIEW — ASSIGNMENTS AVAILABLE—PARTIES NOT APPEALING.

Assignments of error which are only available to certain defendants, who did not file motion for new trial or assignments of error, will not be considered.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Action by T. F. Shelton against the Farmers' Petroleum Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Harry P. Lawther, of Dallas, for appellants. Woods, King & John, of Houston, for appellee.

BROOKE, J. January 13, 1915, appellee, Shelton, an employé of the Farmers' Petroleum Company, had his right arm badly injured while engaged in assisting in "making up" some pipe at well No. 4, which was then being drilled by the company in their Humble field. At the time the Farmers' Petroleum Company was the holder of a policy in the Texas Employers' Insurance Association, providing for the payment of compensation to its employés under the provisions of the Texas Employers' Liability Act, 33d Leg. c. 179, and was a "subscriber," under the terms of the act. After the accident, and prior to the institution of this suit, namely, on November 7, 1915, the Farmers' Petroleum Company was, by action of its stockholders, voluntarily dissolved, T. P. Lee being its president and one of its directors, and J. S. Cullinan, James L. Autry, Will C. Hogg, and E. F. Woodward being its other directors at the time.

Upon the contention that the provisions of the Employers' Liability Act were inoper-

ative as to him, because he had never been given the notice provided for in section 19, pt. 3, of the act (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246x), and ignoring the act, appellee instituted this suit at common law for damages for the personal injuries sustained by him against the dissolved corporation, the Farmers' Petroleum Company, and against the Republic Production Company, and also against the said Lee, Cullinan, Autry, Hogg, and Woodward, individually, alleging that the Republic Production Company had acquired all of the assets of the Farmers' Petroleum Company, and had assumed all of its liabilities; or, if this were not true, that the said Lee, Cullinan, Autry, Hogg, and Woodward had each received, in money or other property, from the Republic Production Company, in consideration of the transfer to it of the assets of the Farmers' Petroleum Company, or that each received assets of the Farmers' Petroleum Company in excess of appellee's claim.

By trial amendment appellee urged specific acts of negligence, and that his said injuries were the direct and proximate result of the carelessness and negligence of his said foreman, the said defendants' vice principal, setting out the specific acts.

Appellants answered with plea in abatement, suggesting the dissolution of the Farmers' Petroleum Company, and that Lee, Cullinan, Autry, Hogg, and Woodward, the surviving directors, were not sued in their capacity as trustees for the creditors and stockholders, and general and special demurrers, and plea in bar that, at the time of the receipt of the alleged injury, appellee was in the employment of the Farmers' Petroleum Company, who was a "subscriber" within the provisions of the Texas Employers' Liability Act, having provided for compensation to its injured employés by insuring with the Texas Employers' Insurance Association, of which fact appellee had notice in writing and in print, as provided in the act; that no claim for compensation had been made by appellee, and that no question arising under the act between the interested parties had been determined by the Industrial Accident Board; also by general denial, plea of assumed risk of a known danger, and plea of contributory negligence.

The case was tried by a jury in the Harris county district court upon special issues, and upon the answers of the jury judgment was rendered, dismissing appellee's suit as to the Republic Production Company, and in favor of appellee against the defunct Petroleum Company, and against Lee, Cullinan, Autry, Hogg, and Woodward as individuals, jointly and severally, for $15,000, and for the same amount against the same parties as representatives of the dissolved corporation. The appeal has been perfected to this court by supersedeas bond.

The first assignment of error is as follows:

"The court erred in refusing to direct a verdict for these defendants as requested by them in their special charge No. 2, because the evidence was undisputed that, at the time of the receipt by the plaintiff of the injuries complained of by him herein, he was in the employment of the Farmers' Petroleum Company; that said Farmers' Petroleum Company, while the plaintiff was an employé, became a subscriber to the Texas Employers' Liability Act, c. 179, General Laws of the Thirty-Third Legislature and amendments thereto, by insuring with the Texas Employers' Insurance Association of Dallas, Texas; that it had given notice to its employés of the fact that it was such a subscriber, in the manner provided by the order and rules of the Industrial Accident Board."

Several propositions are urged under this assignment, as follows:

(a) "The act is not rendered inoperative as to employés of a subscriber because of the latter's failure to give the notice prescribed in section 19, part III, of the act of 1913."

(b) "A clause of a statute is directory when the provision contains mere matters of direction and no more, but not so when it is followed by words of positive prohibition."

(c) "Section 19, part III, Texas Employers' Liability Act of 1913, providing, 'Every subscriber shall, as soon as he secures a policy, give notice, in writing or print, to all persons under contract of hire with him, that he has provided for payment of compensation for injuries with the association,' not being followed by words of prohibition, is directory only, not mandatory."

(d) "Appellee had actual knowledge that his employer had provided for payment of compensation for injuries with the association."

Two counter propositions are urged, as follows:

(a) "To defeat appellee's common-law action by the provisions of the Employers' Liability Act, it was essentially necessary that the Farmers' Petroleum Company should have given him notice, in writing or print, that it had become a 'subscriber' to such act, or to show that he had actual notice of such fact."

(b) "The defense urged by appellants under first assignment of error is available to appellants Cullinan, Autrey, Lee, Hogg, and Woodward only as made through the Farmers' Petroleum Company, or themselves as stockholders and managing directors of said corporation, and such defendants against whom judgment was rendered not having filed a motion for new trial or assignments of error, because of which' failure the judgment as against such defendants is entitled to be affirmed upon the record, and cannot avail the individual defendants upon this appeal, even though the assignment announced a correct proposition of law."

[1] Not only has the entire act been passed upon by the Supreme Court of this state, but section 19, pt. 3, of the act of 1913, has been passed upon by two of our courts· of Civil Appeals, to wit, that of San Antonio and Amarillo, each of which held that the act is rendered inoperative as to employés of a "subscriber" because of the latter's failure to give the notice prescribed in section 19, pt. 3, of the act of 1913. Having carefully read the opinions in the cases of Kampmann v. Cross, 194 S. W. 439, and Rice v. Garrett, 194 S. W. 668, we are firmly convinced that the position taken by the said courts with reference to section 19, pt. 3, of the act of 1913, is correct, and, quoting from the case of Kampmann v. Cross, we are of opinion that the

language used by the said court is conclusive of the matter referred to, said court saying:

"It is true that it is provided in article 5246i that the employés of a subscriber to the association shall have no right of action against the employer for damages for personal injuries, but that article must be construed with articles 5246x and 5246xx, which require notice to employés. So far as the employé who has not been notified is concerned, the employer is not a subscriber. The notice creates the relation of subscriber employer and employé, and without the notice the relation cannot exist."

It is not our purpose to go into details and analyze the reasoning of the above cases, which have fixed the rule in our Texas courts, and, in our judgment, they are in consonance with the opinion handed down by our Supreme Court in the case of Middleton v. Texas Power & Light Co., reported in 185 S. W. 556. We do not believe, and on the contrary are firmly impressed with the idea, that the clause of the statute is mandatory, and not directory, because the entire opinion of our Supreme Court in the Middleton Case strongly tends to show that in the mind of the court, as said by Judge Fly in the quotation just made, "the notice creates the relation of subscriber employer and employé, and without the notice the relation cannot exist." No unprejudiced person can read the Middleton Case without arriving at the same conclusion; and in this connection it might be well to say that it is the opinion of this court that the posting of notices alone, without any fact or circumstance going to show that the employé had read or become acquainted personally with the notice, would not be sufficient, but that the act is not only mandatory, and requires the actual giving of written or printed notice by the employer to the employé, and that these facts should not be left to presumption, but should rest upon actual proof. The fact, as contended by appellants, that section 19, pt. 3, of the act of 1913, is not followed by words of prohibition, could not and would not, in our opinion, render the said clause any the less mandatory and compelling; and the fact, if it be a fact, that there were posted upon the premises on and about which appellee worked notices that it had provided for payment of compensation to its injured employés under the Employers' Liability Act, c. 179, General Laws of the Thirty-Third Legislature and amendments thereto, by insuring with the Texas Employers' Insurance Association of Dallas, Tex., would be only an evidence, not conclusive but admissible only, to show that the employé had actual notice as required by the statute.

In our judgment, Judge Fly in the case of Kampmann v. Cross does not find warrant alone for the conclusion reached by him in that case upon the theory that the act deprives the employé of certain rights for the benefit of the employer, but his conclusion is rested upon the entire opinion of our Supreme Court in passing upon the case of Middleton v. Texas Power & Light Co., and which, as before said, indicates to our minds that the Supreme Court considered that the notice was absolutely necessary in order to create the relationship of subscriber between the employer and employé, and that without the notice the relation cannot exist.

We have been instructed by the argument of appellants, and with the theory advanced with reference to the matter of persons having a vested right in any rule of the common law, and that such person has only an expectation of a continued existence of a present law with reference to the same. However this may be, our opinion in this case and in this matter is based upon the sound reasoning of the San Antonio court, but mainly based upon the construction of the act as interpreted by the Supreme Court in the Middleton Case. The first assignment is therefore overruled. Middleton v. Light Co., 185 S. W. 556; Kampmann v. Cross, 194 S. W. 437; Rice v. Garrett, 194 S. W. 670; Daniels v. Boldt, 78 W. Va. 124, 88 S. E. 613; Bernard v. Traction Co., 188 Mich. 504, 155 N. W. 565.

[2] Complaint is made by the second assignment that the court erred in overruling defendants' amended motion for new trial, for the reasons set out in said motion, in paragraphs 5 and 6 thereof.

Paragraph 5 of the amended motion is as follows:

"The answer of the jury to special issue No. 14 was against the weight of the evidence and the preponderance of the testimony, and was evidently induced by matters other than the evidence in the case."

Paragraph 6 was to the effect that the answer of the jury to special issue No. 16 was not only against the weight of the evidence and the preponderance of the testimony, but directly contrary to the uncontroverted evidence in the case.

Special issue No. 14 was as follows:

"Prior to the receipt of his injuries, and while the said Shelton was in the employment of the Farmers' Petroleum Company, did he from any source have actual knowledge that the Farmers' Petroleum Company had provided for payment of compensation to its injured employés under Employers' Liability Act, chapter 179, General Laws Thirty-Third Legislature, and amendments thereto, by insuring with the Texas Employers' Insurance Association of Dallas, Texas?"

To this issue the jury answered, "No."

Special issue No. 16 was as follows:

"Prior to the receipt of his injuries, and while the said Shelton was in the employment of the Farmers' Petroleum Company, did the Farmers' Petroleum Company put, in six or more conspicuous places where the said Shelton was employed, notice that it had provided for payment of compensation to its injured employés under Employers' Liability Act, chapter 179, General Laws Thirty-Third Legislature and amendments thereto, by insuring with the Texas Employers' Insurance Association of Dallas, Texas?"

To this issue the jury answered, "No."

This calls in question a proposition that has been passed on by the jury, that the appellee did not have actual notice of said facts. Not only did the jury pass upon this

in no uncertain terms, but the testimony abundantly justifies such action of the jury. Appellee testified:

"I did not sign anything of this nature, * * * of the nature that he read to me (referring to cards signed by employés). I say that I never saw any notices posted up there. No one ever told me, nor did I hear that they were subscribers. I did not have any idea as to whether they were or were not subscribers up to the time I got hurt. My testimony is to this jury now that I am positive it was not there (referring to a notice in the engine house of well No. 1)."

He further testified that he examined all of the property and premises of the Farmers' Petroleum Company in September, including wells Nos. 1, 2, 3, and 4, and the boiler house and the office; that there was no character of notices posted on well No. 1, or the engine house of well No. 1; that there was no character of notices, such as was referred to, or any other kind of notices, posted on well No. 4 at that time; that there was no character of notices, such as this or any other kind, posted on the boiler house at that time; that there was a notice on wells No. 2 and No. 3 and at the office at the time he made the inspection, and that they all bore date August 19, 1915, some six months after he was hurt.

It is urged that a great many of the employés of the company were notified by printed notices delivered to such employés, and there was produced at the trial a copy of the notices that were sent to the said employés, and as perhaps every one who was interrogated with reference to this, save and except the appellee, was shown to have been served with a copy of such notices, as evidenced by the copy thereof which seems to have been returned to the company, and therefore it is argued that it is a strong circumstance which would tend to show that all of the employés of the company were actually notified by printed or written notice. However, the testimony shows that at the time appellee was injured he was working in a well perhaps 500 yards distant from the great majority of the employés, and it is urged that if he had been served with written or printed notice that the company would have preserved the duplicate of the notice sent him, and that the fact that they were not in possession of such duplicate would be a circumstance tending to show that he did not in fact receive such notice. No witness, it seems from the record, testified that there was ever any character of notice posted at well No. 4; and no witness testified, save Coyle, the driller, that they had ever told appellee that the Farmers' Petroleum Company was a subscriber, or that they ever heard him say that he knew they were a subscriber, or that they ever saw him read any of the notices. This appellee positively denied, and the notices signed by all the other men were produced, but none was produced showing that appellee

had signed such card. Besides this, the court submitted special issue No. 15, as follows:

"Prior to the injuries received by plaintiff, Shelton, herein, and while he was in the employment of the Farmers' Petroleum Company, was the said Shelton personally served by the Farmers' Petroleum Company with any notice, in writing or in print, that the said Farmers' Petroleum Company had provided for payment of compensation to its injured employés under the Employers' Liability Act, chapter 179, General Laws 33d Legislature and amendments thereto, by insuring with the Texas Employers' Insurance Association of Dallas, Texas?"

To this issue the jury answered, "No."

No complaint is made against this finding of the jury as being against the weight of the evidence and the preponderance of the testimony. As we have said before, the jury has passed upon this issue directly, and there is evidence to justify their verdict, and therefore the assignment must be overruled.

[3] By the third assignment complaint is made that the court erred in permitting the witness T. F. Shelton, while on the stand in his own behalf, to testify, over the objection of defendants, that no notice that the Farmers' Petroleum Company had provided for payment of compensation to the injured employés under the Employers' Liability Act, c. 179, General Laws of the Thirty-Third Legislature and amendments thereto, by insuring with the Texas Employers' Association of Dallas, Tex., was posted on well No. 4, or on the boiler house, on the 9th day of September, 1915, the same being the day on which plaintiff, accompanied by his counsel, Mr. King, made examination of the premises for the purpose of ascertaining whether any such notices were posted; because, whether or not any such notices were posted at any such localities on September 9, 1915, eight months after the receipt by plaintiff of his injury, was immaterial, irrelevant, and prejudicial to these defendants, and could throw no light upon the question as to whether notices had not in fact been posted upon the premises about which the plaintiff worked in September, 1914.

It seems that appellee, when called in rebuttal, testified to the same facts complained of in the third assignment, without objection, and this testimony, it seems, was admitted after it had been agreed upon that appellee had served notice upon defendants to produce upon the trial of the case all of the notices posted, and that it had not produced any of such notices. As above stated, appellee was called in rebuttal, and testified on the same point as follows:

"You asked me when I was on the stand at first about these notices and whether I signed anything. When we were out there in September, 1915, examining these properties, when I saw the three notices that I testified about on direct examination at well No. 2, well No. 3, and at the office, dated August 19, 1915, at that time we inspected and made an examination of the derricks and engine house of well No. 1.

There was no character of notices, or any sign of any kind, there in the engine house or about the engine house or on the derrick, or at any place."

It seems that this testimony was given without objection. There also seems to be no evidence or contention on the part of appellants that there was ever any notice, showing that the Farmers' Petroleum Company was a subscriber, posted on well No. 4 or on the boiler house. It therefore being a disputed issue as to whether any notices were posted upon any of the property of the Farmers' Petroleum Company prior to appellee's injury, and said notices being in writing and susceptible of being produced in court, and appellee having served appellants more than three days before trial with notice to produce all of such notices, the objection, in our judgment, goes to the weight of the evidence rather than its admissibility, and, if error, was, in our opinion, harmless. The assignment is overruled.

[4] The fourth assignment is as follows:

"The court erred in overruling said defendants' amended motion for new trial for the reasons set out in said motion, which is here referred to and made a part of this assignment."

Paragraph 2 of the motion for new trial was as follows:

"The answers of the jury to special issues Nos. 1, 2, 3, and 4 are against the weight of the evidence and the preponderance of the testimony, and were evidently induced by matters other than the testimony in the case."

The special issues referred to are as follows:

"Special Issue No. 1: Did or did not Ben Coyle pull on or tighten the rope which was twisted around the pipe without waiting a reasonably sufficient length of time to allow the rope to be lowered, and thereby causing the same to suddenly begin to twist and tighten around the said pipe and catch plaintiff's hand and arm between said rope and pipe?"

To this issue the jury answered, "Yes."

"Special Issue No. 2: If you have answered the foregoing interrogatory 'Yes,' and only in that event, then was the said Ben Coyle guilty of 'negligence,' as that term has been hereinbefore defined to you, in so pulling on and tightening said rope?"

To this issue the jury answered, "Yes."

"Special Issue No. 3: Did or did not Ben Coyle fail to watch and see that no one was working with and lowering the rope around said pipe before pulling on and tightening said rope?"

To this question the jury answered, "Yes."

"Special Issue No. 4: If you have answered the foregoing interrogatories 'Yes,' and only in that event, then was Ben Coyle guilty of 'negligence,' as that term has been hereinbefore defined to you, in failing to watch and see that no one was working with and lowering the rope before pulling on and tightening said rope?"

To this question the jury answered, "Yes."

"Special Issue No. 8: If you have by your answers to either or all of the above interrogatories found that Ben Coyle was guilty of negligence, and only in such event, then was such negligence the proximate cause of the injury received by plaintiff?"

To this issue the jury answered, "Yes."

The answers of the jury to special issues Nos. 1, 2, 3, 4, and 8 were certainly justified by the evidence, and, without going into detail, we are impressed that the issues as so settled by the jury should not be disturbed. The assignment is overruled.

[5] The last assignment complains that the verdict of the jury is excessive, and was the result of passion and prejudice, and evidently induced by matters other than the testimony in the case. The appellee was shown to be a healthy man, 29 years of age, earning $90 per month, had his right hand and arm up to his elbow so crushed, mangled, and broken as to render it worthless, and from which he was confined in a hospital for about four months, undergoing three different operations, at an expense of $1,000. There is nothing suggested by this record that the jury was influenced by passion, partiality, or prejudice, save and except the verdict itself. The following cases indicate that the higher courts of this state have been loath to interfere with reference to verdicts claimed to be excessive: In the case of Thompson-Ford Lbr. Co. v. Thomas, 147 S. W. 296, the Galveston court upheld a judgment for $20,000. Thomas was 28 years of age, lost a part of his foot and some other minor injuries, and was earning at the time something in the neighborhood of $100 per month. In Ry. Co. v. Due, 166 S. W. 918, a verdict for $15,000 was sustained against an assignment that it was excessive. Due was 17 years old, lost all of the front part of his right foot, and was earning from $30 to $40 per month. In Freeman v. Grashel, 145 S. W. 695, a verdict for $13,500 was sustained against an assignment that it was excessive. Grashel had his right hand and wrist crushed, but it does not appear what he was earning at the time or how old he was. In that case the court says:

"With the utmost circumspection and caution, * * * it is unquestionably one of the peculiar duties of the jury to assess damages; and because the law furnishes no legal rule for their admeasurement it does not warrant, but, on the contrary, should rather restrain, the court from substituting its sense of what would be a reasonable compensation for the injury complained of for that of the jury."

Without going into the matter further, we are of opinion that this cause should not be reversed and remanded on account of the excessiveness of the verdict.

[6] The above opinion has been handed down after a thorough consideration of each and all the assignments of error, taking the record as a whole. However, it should be said that the second counter-proposition under the first assignment of error has not been considered in the above opinion, for the reason that it is urged by said proposition that the defense contended for by appellants under the first assignment of error would only be available to appellants Cullinan, Autry, Lee, Hogg, and Woodward, as made through the Farmers' Petroleum Company or themselves as stockholders and managing directors of

said corporation, and that such defendants against whom judgment was rendered not having filed a motion for new trial or assignments of error, that because of such failure the judgment, as against such defendants, is entitled to be affirmed upon the record, and that said defendants could not themselves, as individual defendants, upon this appeal, even though the said assignment announced a correct proposition of law. As above said, having considered all the assignments and the defenses urged by appellants in each of same, and having arrived at the conclusion that the cause must necessarily be affirmed, it is our judgment that, separate and apart from the consideration of the whole record, the second counter-proposition of appellee, as set out above, would require the said judgment to be affirmed upon the record.

The judgment of the court is affirmed.

⊙⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes