ANGELINA & N. R. R. CO. et al. v. DUE.†
(No. 6538.)

(Court of Civil Appeals of Texas. Galveston. April 17, 1914. Rehearing Denied May 14, 1914.)

1. MASTER AND SERVANT (§ 88*)—INJURIES TO SERVANT—RELATION OF PARTIES.

Where a lumber company had constructed portions of a railroad track which it had turned over to a railroad company upon payment of the cost of construction, and was engaged in constructing an additional portion of the track which had not yet been turned over to or paid for, or operated by the railroad company, the railroad company was not liable for injuries to an employé of the lumber company, caused by the negligence of other employés of that company, even though the stockholders and general officers of the two companies were largely the same.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

2. MASTER AND SERVANT (§§ 278, 281*)—INJURIES TO SERVANT — SUFFICIENCY OF EVIDENCE—MASTER'S NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—LAST CLEAR CHANCE.

In an action for injuries received by a railroad construction employé, evidence *held*

---

sufficient to warrant findings that the engineer and fireman of the work train were negligent in starting the train without warning, that the injured servant was not negligent, and that those operating the train saw him in time to avoid the injury and failed to use proper care to prevent it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977, 987–996; Dec. Dig. §§ 278, 281.*]

3. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE.

A railroad construction employé was not negligent, as a matter of law, in stepping upon the track in front of a work train which was standing still at the time, and in proceeding down the track toward the water barrel without looking back, since he had the right to rely upon the performance by those in charge of the engine of their duty to give a warning before they started the train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

4. MASTER AND SERVANT (§ 228*)—INJURIES TO SERVANT — CONTRIBUTORY NEGLIGENCE — STATUTE.

Acts of 31st Leg. (1st Ex. Sess.) c. 10, § 2, which provides that, in actions brought under that act by employés of a common carrier by railroad for personal injuries, the contributory negligence of the employé shall not bar recovery, when construed with the other sections of the act which apply to all railroads, and in the light of the manifest purpose of the act, applies to a railroad operated by a lumber company in conducting its own business, as well as to a common carrier.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. § 228.*]

5. MASTER AND SERVANT (§ 97*)—INJURIES TO SERVANT—NEGLIGENCE—ANTICIPATION OF INJURY.

Where the engineer and fireman of a work train started it without giving any warning, although they knew that there were a number of workmen around the train, they must have anticipated that such negligence might result in injury to a workman, especially where the engineer testified that it was an absolute rule to give a signal before starting such a train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 163; Dec. Dig. § 97.*]

6. MASTER AND SERVANT (§ 264*)—INJURIES TO SERVANT — PETITION — LAST CLEAR CHANCE.

Where a petition for injury to a railroad construction employé charged that the defendant's servants were negligent, in that they saw plaintiff pass the engine, and knew that he was a short distance in front thereof, and was ignorant of their intention to start, and knowing and seeing his position in time to have avoided the injury, they carelessly started the train, the allegation is sufficient to raise the issue of last clear chance.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

7. MASTER AND SERVANT (§ 284*)—INJURIES TO SERVANT — INSTRUCTIONS — LAST CLEAR CHANCE.

Where plaintiff, an injured servant, had testified at a former trial that, when he passed the engine of a work train which later struck and injured him, the fireman was in the gangway, from which place he could not have seen the plaintiff when he stepped upon the track in front of the engine, and at the second trial testified that the fireman was at his window, from which the plaintiff could have been seen, and his later testimony was corroborated by other witnesses, it was for the jury to say which testimony was true, and an instruction upon the doctrine of the last clear chance which was predicated upon the later testimony was proper.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1000–1090, 1092–1132; Dec. Dig. § 284.*]

8. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE—QUESTION FOR JURY.

In an action for injuries received by a railroad construction employé who was struck by a work train, testimony by the engineer that he could have seen the plaintiff if he had been where the testimony of the plaintiff and other witnesses showed that he was, and that the engineer looked before he started the train but did not see any one on the track, is sufficient to take to the jury the issue that the engineer did see the plaintiff; the presumption arising from the facts not being conclusively rebutted by the denial by the engineer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

9. TRIAL (§ 191*)—INJURIES TO SERVANT—INSTRUCTIONS—ASSUMING FACTS.

In an action for injuries to a railroad construction employé, an instruction upon the doctrine of last clear chance which stated that, if the jury believed from the preponderance of the evidence that the engineer and fireman knew that the plaintiff was in front of the engine in time to have avoided the injury, the defendant was liable was not erroneous, as assuming that the engineer and fireman discovered plaintiff's peril in time to have avoided the injury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

10. MASTER AND SERVANT (§ 137*)—INJURIES TO SERVANT—INSTRUCTIONS—MASTER'S DUTY TO WARN.

An instruction that, where persons have a right to be on the track near a train that is standing still, it is the duty of the employés to give a warning before starting the train, and that the failure to do so would be such negligence as would entitle another employé injured as a result thereof to recover, is not erroneous, since reasonable minds could not differ in the conclusion that ordinary care in such case required the warning to be given.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. § 137.*]

11. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT—INSTRUCTION—MASTER'S DUTY TO WARN.

A statement in such a charge that it was the duty to give some warning, such as by ringing the bell or blowing the whistle, is not erroneous, as requiring a warning to be given in one of those two ways, and not otherwise.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

12. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.

If the charge was open to that construction, the error was harmless, there being no evidence that a warning was given in any manner other than by ringing the bell or blowing the whistle.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**13. DAMAGES (§ 132*)—EXCESSIVE DAMAGES— LOSS OF FOOT.**

A verdict for $15,000 for damages sustained by a minor whose foot was so severely injured by a railway locomotive that its amputation was necessary is not so excessive as to justify the belief that the jury were moved by passion or prejudice, or by some improper influence.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Nacogdoches County; L. D. Guinn, Judge.

Action by James W. Due, by his next friend, S. T. Due, against the Angelina & Neches River Railroad Company and the Angelina County Lumber Company. Judgment for plaintiff against both defendants, and both defendants appeal. Judgment against the Railroad Company reversed and rendered in its favor, and judgment against the Lumber Company affirmed.

Arthur A. Seale and Wm. A. Wade, both of Nacogdoches, Mantooth & Collins, of Lufkin, Young & Stinchcomb, of Longview, and T. D. Wynne, of Fordyce, Ark., for appellants. C. M. McKinnon, of Groveton, King & King, of Nacogdoches, and Platt & Nelms, of Groveton, for appellee.

PLEASANTS, C. J. Appellee, by his next friend, S. T. Due, brought this suit against appellants, Angelina & Neches River Railroad Company and Angelina County Lumber Company, to recover the sum of $25,000, as damages for personal injuries sustained by him, and alleged to have been caused by the negligence of appellants. The petition alleges, in substance, that appellee at the time of his injury was in the employment of both of the defendants as a surfacer engaged with others in the construction of a railroad for defendants; that, while in the proper performance of the duties of his employment, the employés of defendants operating a work train on said railroad negligently put said train in motion without ringing the bell or sounding the whistle on the engine attached thereto, or giving any warning to appellee, and ran said engine against appellee, knocking him down and so injuring his foot as to require its amputation. The petition further alleges that the operatives of said engine and train were negligent in that, after they saw and realized appellee's peril, they failed to use the means at their command to prevent his injury.

The pleadings of the appellants, including their general denial, put in issue the allegations of the appellee, and permitted them to make the following defenses:

(1) That the appellee and the engineer and fireman were not employés or representatives of the appellant railroad company, but were, at the time of the injury, employés of the appellant lumber company.

(2) That the appellee placed himself on the track ahead of the engine when he knew, or by the exercise of ordinary care could have known, it was going to move in his direction, and was therefore guilty of contributory negligence.

(3) That the Angelina County Lumber Company was not a common carrier, and that the contributory negligence of the appellee prevented a recovery against it.

(4) That the evidence was not sufficient to submit the issue of discovered peril to the jury.

(5) That the plaintiff received his injury as the result of his own negligence, and not by reason of any negligence of either of the appellants.

(6) That plaintiff's injury resulted from a risk assumed by him, and defendants were not liable therefor.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $15,000.

[1] The evidence shows that the railroad, in the construction of which appellee was employed, was being constructed by the lumber company. Appellee and the others engaged in the construction of said road, including the operatives of the work train by which appellee was injured, were employed and their wages paid by the lumber company. After the road was completed, which was shortly after appellee's injury, it was sold or turned over by the lumber company to the railroad company in consideration of the payment to the lumber company by the railroad company of the costs of its construction. The stockholders of the two companies were with a few exceptions the same, and they had the same general officers. But they were separate and distinct corporations, and the accounts of each were kept separate from the other. The lumber company was organized 10 years prior to the organization of the railroad company, which was chartered about 12 years ago. The railroad operated by the railroad company was all built by the lumber company and taken over and operated by the railroad company after its completion. It had been extended from time to time, and, after each extension was made by the lumber company, it was taken over by the railroad company upon the payment of the cost of construction. The undisputed evidence shows that at the time of plaintiff's injury the railroad company had not taken over that portion of the road upon which appellee was at work, and was not operating same as a part of its railroad. The lumber company had been using the road for a short time in hauling logs to its mill; but it was not completed so that it could be used as a commercial railroad, and it was not taken over by the railroad company until it was so completed and ready for general use as a railroad.

The appellants have filed a joint brief; but the assignments in the brief are not all joint assignments.

---

The first assignment presented by appellant railroad company complains of the refusal of the court to instruct the jury to return a verdict in favor of said company.

This assignment must be sustained. The facts before set out conclusively show that the operatives of the engine, by whose negligence appellee alleges he was injured, were not in the employment of the appellant railroad company, but were employed by the lumber company, who was also the employer of appellee, and that the appellant railroad company was not even the owner of the railroad upon which appellee was working at the time of his injury. Upon these facts it goes without saying that the railroad company cannot be held liable for appellee's injury.

Our conclusion that this assignment should be sustained renders it unnecessary for us to pass upon the other assignments presented by the appellant railroad company.

The circumstances under which appellee was injured, as disclosed by the record, are as follows: Just before his injury appellee and other employés of appellant lumber company had been engaged in unloading dirt, to be used for surfacing the road, from a train of cars standing on the track upon which the dirt was to be placed. When the work of unloading was finished, appellee walked along the side of the train, passed the engine, which was facing west, and proceeded on down the track towards the water barrel, which was near the side of the track some distance in front of the engine. The foreman in charge of the work was ahead of appellee, walking down the track. It was in the evening about the time that work was usually suspended and the employés taken in to the work camp a few miles distant. The water barrel was taken in on the train each evening for the purpose of bringing out water for the use of the hands the next day. Appellee testified that he was going to the water barrel for the purpose of assisting in placing it on the train when the time came to start in to camp. He did not know that they would go in at once, and he had his tools with him and was prepared to go to work on the track if so directed by the foreman. As he passed the engine he saw the fireman, who was sitting on his seat in the cab of the engine and looking out of the side window of the cab. The fireman saw appellee and spoke to him. After appellee had passed the engine a short distance, he stepped on the ends of the ties and had proceeded but a short distance further when he was struck by the engine which had been put in motion without the whistle having been blown or the bell rung, or a warning of any kind given appellee of its approach. Appellee was thrown down, and his foot caught under the wheels of the engine and so mashed that its amputation became necessary. When the train was put in motion, the engineer and fireman were in their proper places on the engine. There were windows in front of the cab, and there was no obstruction which would prevent their seeing appellee walking on the ends of the ties in front of the engine. Each of them testified that he did not see appellee until just before he was struck by the engine, and when it was too late for them to stop the train and prevent the injury. The engineer testified as follows: "There was nobody ahead of that train on that track when I started out. I looked down the track to see if I could locate the water barrel. I was looking on both sides of the track for the water barrel, and I could have naturally seen a person on either side of the track. I do not think a person could have been further than six or eight feet from the engine that I could not have seen. If he had been on the ends of the ties on the fireman's side, eight or ten feet in front of the engine, I could have seen him. If he had been in three or four feet of the front of the engine, and on the fireman's side, I do not suppose I could have seen him. I could not see him if he was right close to the engine. I could not see immediately in front of it, but within a few feet. * * * I do not think I could have seen him if he was only three or four feet from the engine, but think I could have seen him if he was eight or ten feet from it. I never did start that engine, when pulling a gang of men like that, without looking to see whether or not anybody was in front of it. Whenever I moved that engine, and was going ahead, I would always look around for signals, and look to see if anybody was on the track. I did that on this occasion. * * * If he [Due] had walked by the side of the engine on the fireman's side, and had gotten on the track in front of the engine on that side, the fireman could have seen him. The fireman said he saw him; but he never said anything about it until after he was hurt. The fireman was about 20 years old. There are three windows on the fireman's side of the cab, one to the side, one in front, and one to the rear. * * * That fireman was slow to think. I told you on one occasion that he was inclined to be careless and slow to think. I don't know about telling you that I could turn that engine around before he could change his mind. I hardly know whether he was reliable or not. I had complained about his unreliableness. I had made this complaint to the company. I had complained to the officials of the company about his being unreliable. * * * Nixon rang the bell; that was one of his weaknesses; he always would ring the bell; he worried me by ringing the bell; he rang it nearly all the time. He was very slow, and he was unsatisfactory about telling me anything; he would hardly ever say anything to me about anything, and that is the objection I had to him. I never had any case where anybody was in danger and find objection to him about that. It was just with reference to the management of his part of the engine. That was the only

time we ever hurt anybody while he was with me."

In not looking back after he passed the engine, appellee relied upon the known rule which required that, before the train should be put in motion, the whistle should be blown.

These facts are sufficient to sustain the findings that the operatives of the train were negligent in putting the train in motion without blowing the whistle or ringing the bell of the engine, that appellee was not guilty of contributory negligence, and that the operatives of the train saw appellee and realized his peril in time to have avoided injuring him, and failed to use proper care to prevent his injury.

The first assignment of error presented by the lumber company complains of the refusal of the court to instruct the jury to return a verdict in favor of said company. Under appropriate propositions submitted under this assignment it is contended, first, that the undisputed evidence shows that appellee was guilty of contributory negligence, and, the evidence being insufficient to raise the issue of discoverd peril, and the defendant not being a common carrier, it cannot be held liable for plaintiff's injury; second, that the act of the operatives of the train in putting same in motion, and failing to give proper warning before starting the train, was not negligence, because said operatives could not have reasonably anticipated that such act and omission on their part might result in injury to any one.

[3] These contentions are disposed of by our fact conclusions before stated. It seems clear to us that, under the circumstances shown by the evidence, appellee cannot be held guilty of negligence, as a matter of law, in going upon the track in front of the engine. The engine was not in motion when he went upon the track, and he had a right to rely upon the performance by the. operatives of the engine of their duty to give proper warning before putting it in motion, and in the absence of such warning it cannot be held, as a matter of law, that a person of ordinary prudence would not .have proceeded down the track as appellee did without looking back to see if the train was coming. While the evidence is conflicting upon the question, there is evidence to sustain the findings that no warning of any kind was given of the moving train, and the noise made by its movement was not sufficient to attract appellee's attention, and it is beyond dispute that he did not hear it coming until it struck him. Under these facts the issue of contributory negligence was a question for the jury.

[4] We do not think the act of the Thirty-First Legislature, which provides in substance that, in suits by an employé against a railway company to recover damages for personal injuries, the fact tha. the employé may have been guilty of negligence should not bar a recovery, but may be considered by the jury in determining the amount of damages to which such employé is entitled, should be held to apply only to railroads operated as common carriers. Acts 31st Leg. (1st Ex. Sess.) c. 10, p. 279. The language.of the second section of the act is susceptible of the construction contended for by appellant; but, when the entire act is considered, and due regard given to the evident purpose and intent of the Legislature, we do not think it should be so construed. The employés of a railroad operated by a lumber company in conducting its business are engaged in the same dangerous employment as the employés of a railroad operated as a common carrier, and entitled to the same consideration, and, unless the act as a whole is susceptible of no other construction, it should not be interpreted as discriminating between such employés.

As we have before found, the evidence was sufficient to raise the issue of discovered peril; but, if that issue was not in the case, the appellee was entitled to have the jury pass upon his right to recover upon the other grounds of negligence alleged.

[5] The contention that the evidence fails to show negligence because the operatives of the train could not have reasonably anticipated that putting the train in motion without giving any warning would likely result in injury to some one is wholly without merit. The operatives of the engine knew that there were a number of employés around and about the train, and, so far from there being no reason for the engineer and fireman to anticipate that putting the train in motion without warning might injure some of said employés, it seems to us that every dictate of reason and prudence would suggest the danger of such movement of the train. As showing his full appreciation of such danger, the engineer testified: "It is the absolute rule among railroad people to always give signals when going to start a train, and that is blowing two blasts of the whistle; that is done on anything like a work or freight train."

The third and fourth assignments presented by the lumber company are each predicated upon the assumption that the undisputed evidence shows that appellee was guilty of contributory negligence, and for the reasons before stated each of said assignments is overruled.

The fifth assignment complains of the following portion of the court's charge: "If the defendants, by their servants in charge of the engine (that is, the engineer and fireman, or either of them, if you should find that such engineer and fireman were the servants of the defendants), knew when they started the engine, or after it was in motion, that plaintiff, James W. Due, was in front of the engine on the track, or so near to it that, unless he moved aside, he would be struck and injured, and they had such knowledge in time to have avoided injury, such knowledge imposed upon them the duty of using every

means then within their power, consistent with the safety of the engine and cars and the persons thereon, to avoid running him down or striking him, and failure to use such means would render the defendants liable, notwithstanding plaintiff may have been wrongfully on or so near the track. Therefore, if you believe from a preponderance of the evidence that, after plaintiff, Due, was discovered in front of the engine, if you find he was discovered by the engineer or fireman on the track, or so near it that he would be struck on its approach, defendants' servants in charge of the train negligently failed to use such care, attention, and skill, and effort to get him off the track before starting (if they knew of his presence in front of the engine before starting), or if they first discovered his presence in front of the engine after starting, and negligently failed to use such care, skill, and effort then to stop or check up the train and avoid the collision with plaintiff, as they reasonably should and could have done after it reasonably became apparent to them that plaintiff would not get off of or a safe distance from the track, and that he was in peril of injury, and if plaintiff received some or all of the injuries complained of in his petition through such fault of defendants' said servants, then you will find for plaintiff."

[6] The first objection to this charge is that plaintiff's petition does not present the issue of discovered peril, in that it failed to allege that the operatives of the engine saw plaintiff "in a place of peril in time to have, by the use of the means at hand, avoided his injury."

This objection is untenable. The petition contains the following allegations: "Plaintiff charges that the defendant was guilty of negligence and want of care in this: (a) Defendant's said agents, servants, and employés in charge of said engine and train saw this plaintiff when he passed said engine, and knew that he was at a point only a few feet in front of same, and was in total ignorance of their intention to start the same, and, knowing and seeing plaintiff's perilous position in time to have avoided his said injury, negligently and carelessly started said train and ran the same down upon this plaintiff, injuring him as aforesaid."

The allegation that the operatives of the train saw appellee when he passed the engine, and knew that he was at a point only a few feet in front of same, and ignorant of their intention to start the engine, is, we think, a sufficient allegation that the operatives of the engine knew of the peril and danger appellee would be placed in if the engine was started without warning. But the petition goes further and alleges that the operatives, "knowing and seeing plaintiff's perilous position in time to have avoided said injury, negligently and carelessly started said train and ran the same down upon this plaintiff." We hardly think there could be a more positive allegation of knowledge on the part of the operatives of the engine of appellee's perilous position.

The next objection to this charge is that the evidence is insufficient to sustain a finding that the operatives of the train discovered appellee's peril in time to have avoided injuring him.

The appellee testified that at the time he passed the engine going to the water barrel the fireman, Nixon, was sitting in his seat on the left side of the engine, which was the side by which appellee passed. There were three windows on that side of the cab, one in front, one on the side, and one in the rear. From his position in the cab, the fireman could see up the track far beyond the place at which appellee was walking when he was struck by the train. He further testified: "I spoke to the fireman as I passed, and he saw me and spoke to me. I believe I could have reached up through the window and touched him when he spoke to me. I looked up and saw him; he was sitting upon his seat, with his head kinder hanging out of the window, and was looking right at me, and saw me. I was acquainted with the fireman, and he was acquainted with me. When I spoke to him, and he spoke to me, I would say he was about two feet from me. I did not stop walking at the time, but just walked by. The last time I saw him he was sitting in the window on his seat, and was looking at me. I went down track toward the river. After I passed from the side window on down to the side of the engine, the fireman would have seen me by looking out through the front window. He could have seen me a long ways down the track. The track was straight for 200 or 300 yards, I suppose, and was about level. The engine was standing still when I passed in front of it."

The fireman, Nixon, testified that he saw appellee as he passed by the engine; that at this time he (the fireman) was standing in the gangway between the engine and the tender, and appellee was walking by the side of the engine going towards the front; that the engine was moving slowly at the time the appellee was walking beside it; and that he did not see appellee again until he fell. Appellee is corroborated in his statement that the train was standing still when he passed by it, and when he went on the track, by other witnesses.

George Matthews, a witness for plaintiff, testified that appellee was from six to ten feet in front of the engine before it was started. Appellee testified that he got on the track one or two feet in front of the engine, and that he had walked fifteen or twenty from where the engine was standing when he got on when he was struck. It is shown by the testimony of the engineer before quoted that, before the engine was started, he looked down the track to locate the water barrel, and that he could have seen any per-

son on either side of the track who was as much as six or eight feet in front of the engine, but he does not suppose that he could have seen one who was on the left side of the track, and only three or four feet in front of the engine. He further testifies he did not see appellee, but that, if appellee walked by the side of the engine and got on the track in front of the engine, the fireman could have seen him and told witness that he did see him, but did not tell him this until after appellee was hurt; that the fireman was careless and slow to think and act; and that he had complained of the fireman's unreliableness.

We think it clear that the evidence raises an issue as to whether the fireman knew and saw appellee on the track in front of the engine at the time the engine was started. If he saw him, he was bound to have realized appellee's peril from the approach of the engine put in motion without warning. If the fireman saw appellee in his position of peril, and failed to ring his bell or give other warning which he might have done in time to avoid the injury, or failed to inform the engineer, who, the evidence shows, could have stopped the engine in six or eight feet, such failure on the part of the fireman to use the means at his command to avoid the injury was negligence, and appellant was liable therefor, without regard to the question of appellee's negligence.

[7] Appellant contends that upon a former trial of the case appellee testified that, when he passed the engine, the fireman was in the gangway between the engine and the tender, and that appellee is bound by his former testimony, and will not be permitted to contradict it and place the fireman in a different position, and that under the former testimony of appellee the position of the fireman was such that he could not have seen appellee on the track in front of the engine; and therefore the issue of discovered peril is not raised.

Appellee did not admit that he made the statement on the other trial claimed by appellant, but testified that he did not think he made any such statement, and that the fireman was not in the gangway but in his seat when he passed the engine. The stenographer who made a record of the testimony on the former trial testified that he felt sure the record was correct; and this record shows that the appellee testified as claimed by appellant. This testimony raises an issue as to what appellee's former testimony was; but, if it be conceded that he did state on the former trial that the fireman was in the gangway, it was a question for the jury to determine from all the evidence whether his statement upon this or the former trial was correct, and there is no rule of estoppel which would prevent the jury from accepting as true the statement made on the last trial, especially as that statement is corroborated by other evidence.

[8] We think the evidence is also sufficient to raise the issue as to whether the engineer saw appellee upon the track in time to have avoided his injury. His statement that he did not see him is not directly contradicted as is the fireman's statement. But the jury could have found from the evidence that, at the time the engine started, the appellee could have been seen by the engineer, who testified that he looked down both sides of the track before starting the engine. The presumption that arises from these facts is not conclusively rebutted by the statement of the engineer that he did not see the appellee.

[9] The objection to this charge that it is upon the weight of the evidence, in that it assumes that the operatives of the engine discovered appellee's peril in time to have avoided his injury, is without merit.

The court did not err in refusing to give any of the special charges mentioned in appellant's assignments of error 6 to 13, inclusive. Those of said charges which are correct were either unnecessary because the issue submitted was sufficiently covered by the charge given by the court, or the issue was not of sufficient importance to justify the belief that the refusal to give such charge probably resulted in an erroneous verdict. Each of said assignments is overruled without discussion.

[10] The fourteenth assignment of error complains of the following charge: "It is the duty of the operators of a train to use ordinary care to discover persons who may be upon the track before starting a train, when such trains be standing, if such persons have a right to be upon the track, and to give some warning, such as ringing the bell or blowing the whistle on the engine, to such persons that said train is attempting to start up, and a failure to use such care would be such negligence as to entitle a person who was not himself also guilty of negligence to recover for injuries received in consequence thereof."

The objection made to this charge is that it in effect makes the failure to ring the bell or blow the whistle before starting a train, under circumstances stated in the charge, negligence as a matter of law, when there is no statute requiring that the bell be rung or whistle blown under such circumstances, and the failure to give such warning does not show such a lack of ordinary care that reasonable minds cannot differ in the conclusion that such failure constitutes negligence.

[11, 12] The charge is not subject to this criticism. We do not think reasonable minds can differ in the conclusion that, before a train is put in motion on a track on which people have a right to be, and, as in this case, may be expected to be, it is the duty of the operatives of such train to use reasonable care to discover persons on the track, and to give them warning of the approach of the train. The mention in the charge of ringing the bell or blowing the whistle does

not require that one of these warnings should have been given; but such or any similar warning sufficient to attract the attention of the people on the track is all that the charge requires. But, if the charge should be constructed as contended by appellant, it was harmless error, because there was no evidence that the operatives of the train gave any warning other than ringing the bell and blowing the whistle, and, if these warnings were not given, the engine was moved without any warning.

The fifteenth and sixteenth assignments of error are without merit, and each of them is overruled without discussion.

The seventeenth assignment complains of the refusal of the court to instruct the jury that plaintiff was not entitled to recover if the jury found his injury was the result of a want of ordinary care on his part in walking upon the track in front of the engine.

It follows from our conclusions that the act of the Legislature before cited, providing that, in suits by employés of railroads to recover damages for personal injuries, the fact that the employé is guilty of negligence shall not bar his right of recovery, applies to this suit, the requested charge was erroneous, and it was therefore properly refused.

[13] The verdict of the jury for $15,000, in view of the character of appellee's injury and the suffering which he must have undergone, is not so large as to justify the belief that, in fixing that amount as compensation for appellee's injury, the jury were moved by passion or prejudice, or some improper influence, and we are therefore not authorized to disturb their finding upon this issue.

The remaining assignments in appellant's brief do not require discussion, none of them in our opinion present any error which requires a reversal of the judgment against the appellant lumber company, and each of them is overruled.

The judgment of the court below against the appellant railroad company is reversed, and judgment here rendered in favor of that company, and the judgment in favor of appellee against the appellant lumber company is affirmed.

Reversed and rendered in part. Affirmed in part.