WEIL et al. v. MILLER et al. (No. 7692.)

(Court of Civil Appeals of Texas. Galveston. June 20, 1919. Rehearing Denied Oct. 9, 1919.)

1. APPEAL AND ERROR &#x25C9;&#x21DD;996—FINDING OF FACT WILL NOT BE DISTURBED THOUGH COURT MIGHT HAVE FOUND OTHERWISE.

If there is room for difference of opinion between reasonable men as to inferences or conclusions which might be drawn from the evidence, an appellate court will not disturb the findings of the jury, even though it might have made a different finding on the evidence adduced upon the trial.

2. MORTGAGES &#x25C9;&#x21DD;319(3)—IN ACTION TO SET ASIDE FORECLOSURE, PAYMENT OF DEBT SHOWN BY EVIDENCE.

In an action to set aside a decree of mortgage foreclosure, evidence *held* sufficient to support a finding that mortgage indebtedness had been paid prior to the foreclosure.

&#x25C9;&#x21DD;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. EVIDENCE ⊙�net588—CREDIBILITY OF WITNESS FOR THE JURY.

The fact that a witness testified differently in another case did not affect the competency of his testimony, the former testimony being only matter for the consideration of the jury as to the effect to be given his testimony before them.

4. ESTOPPEL ⊙�net68(1)—INTRODUCTION OF EVIDENCE OF PLAINTIFF'S WITNESS IN ANOTHER ACTION.

Where defendant offered some of the evidence of one of plaintiff's witnesses given in a suit in another court as to a certain matter, plaintiff was not estopped from asserting the truth of the testimony of such witness on the trial because his counsel insisted on the introduction of the whole transcript in the former proceeding, bringing to light the inconsistent testimony; such testimony having been practically placed before the jury by defendant's witness.

5. ESTOPPEL ⊙⟷68(1) — INCONSISTENT EVIDENCE OF PLAINTIFF'S WITNESS IN ANOTHER SUIT DID NOT ESTOP PLAINTIFF TO DENY ITS TRUTH.

Plaintiff was not estopped to deny the truth of testimony of one of his witnesses by reason of the introduction by him of a transcript of the testimony of such witness in another suit apparently inconsistent therewith, where such former testimony contained expressions that would authorize the jury to find that the facts contended for by plaintiff were true.

6. APPEAL AND ERROR ⊙⟷1062(1)—ERROR IN SUBMISSION OF QUESTION HARMLESS WHERE SIMILAR FINDING MADE TO ANOTHER QUESTION.

In an action to set aside a decree of mortgage foreclosure, if court erred in submitting to jury question as to whether a mortgage note had been in part paid, it was harmless, where the jury found in answer to another question that the note had been paid in full.

7. TRIAL ⊙⟷350(4) — REFUSAL TO SUBMIT QUESTIONS RAISED BY ISSUES, ERROR.

In an action to set aside a mortgage foreclosure by one who purchased the land before foreclosure but had not been made a party to the foreclosure proceeding, and who pleaded estoppel to deny that the mortgage note had been paid, court erred in refusing to submit to the jury questions as to whether or not the mortgagees knew of the sale of the land by the mortgagor before its consummation, and stood by and acquiesced therein, etc.

8. MORTGAGES ⊙⟷529(10) — IN FORECLOSURE DEFENDANT COULD NOT SHOW PAYMENT UNDER GENERAL ISSUE.

In an action concerning the right of mortgagee to foreclose, landowner was not entitled to show that the mortgage note had been paid, where he did not plead payment.

9. MORTGAGES ⊙⟷497(2)—CONCLUSIVENESS OF JUDGMENT OF FORECLOSURE AGAINST MORTGAGOR AGREEING TO ENTRY.

In an action to set aside a mortgage foreclosure by one who had purchased part of mortgaged land prior to foreclosure, and had not been made a party to the foreclosure, the mortgagor, who was made a party to the proceeding, could not show that the mortgage note had been paid prior to the foreclosure, where he had agreed to the rendition and entry of judgment foreclosing the mortgage, and did not ask in his pleading that such judgment be annulled.

Appeal from District Court, Colorado County; Dan T. Price, Special Judge.

Suit by Mrs. Laura A. Miller against A. Weil and I. Weil and others. From an adverse judgment the named defendants appeal. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, for appellants.

Sam'l B. Dabney, of Palestine, Townsend & Quin, of Columbus, Edward Gaudern, of Bryan, Ohio, and Mason Williams, of San Antonio, for appellees Hadsell and Hadsell Land Corporation.

LANE, J. This suit was instituted in the district court of Colorado county by Mrs. Laura Miller, one of the appellees, against A. and I. Weil as individuals and as copartners in the business of A. & I. Weil, and against C. E. Hadsell and wife, Ruby Hadsell, First National Bank of Ft. Wayne, Ind., the Hadsell Land Corporation, W. W. Wyrick and John Wilding, to set aside a certain decree theretofore rendered in said court whereby a certain mortgage was foreclosed as against certain lands owned by her situated in said Colorado county, and for other purposes not necessary to be here stated.

The defendant First National Bank of Ft. Wayne, having filed its disclaimer of any interest in the subject-matter of the suit, was dismissed from the cause, and therefore no further notice of it will be made in this opinion.

Neither defendant Wilding nor Wyrick have appealed from the judgment rendered against them. Nor have either of them asked any relief at the hands of this court in any manner whatever, and for these reasons they will not be further mentioned herein.

The defendants C. E. Hadsell and wife, Ruby Hadsell, and the Hadsell Land Corporation filed answers of general denial only. Judgment for the foreclosure of the mortgage lien pleaded by the Weils was foreclosed as against them upon the land claimed by them on the appeal, but no personal judgment was rendered against any of them for any sum whatever, and none of them have appealed. They have, however, filed their joint brief, in which they assign fundamental error. We shall defer further discussion of the issue sought to be raised by the assignments of these defendants until we shall have disposed of the issues between the

_____

⊙⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

plaintiff Mrs. Miller and the defendants A. & I. Weil, the nature of which we hope to make clear by the following statement:

On the 15th day of February, 1910, C. E. Hadsell held the legal title to about 1,500 acres of land situated in Colorado county, Tex., and to secure the payment of one note for the sum of $11,000, executed and delivered by him and his wife, Ruby Hadsell, to A. & I. Weil on said 15th day of February, 1910, due and payable to the Weils one year after date, Hadsell and wife executed and delivered to the Weils a mortgage upon the above-mentioned land, except about 322 acres thereof, hereinafter called the Findley tract, which is not directly involved in this suit; 729 acres of the land so mortgaged, which will hereinafter be designated and called the 729-acre tract, was thereafter, on the 14th day of March, 1913, by warranty deed conveyed by Hadsell and wife to John H. Miller and wife, Laura Miller, of Williams county, Ohio, for a consideration of $4,600 cash paid by the Millers to C. E. Hadsell, and the further consideration of the conveyance by the Millers to Hadsell of certain land owned by them situated in Ohio of the agreed value of $10,200. Shortly after the Millers purchased the Colorado county land they moved upon it, took possession thereof, and held such possession until some time in November, 1913, at which time John H. Miller died. After his death his widow, Mrs. Laura Miller, became the sole owner of the same, and has ever since continued her possession thereof.

On the 20th day of December, 1913, while Mrs. Miller was in possession of the 729-acre tract covered by the mortgage of the Weils, the Weils brought suit in the district court of Colorado county against Hadsell and wife upon the said $11,000 note of date February 15, 1910, praying for judgment for the full amount of the principal, together with interest, costs, etc., and for a foreclosure on all the Colorado county land covered by their mortgage, which included the Miller 729-acre tract and three other tracts which were not sold to the Millers by Hadsell and wife. Hadsell and wife filed their answer to this suit on the 10th day of February, 1914, and thereafter, on the 16th day of September, 1914, by an agreement of all parties to the suit, judgment was rendered for the Weils for the sum sued for and for a foreclosure of their mortgage lien on all land covered by the mortgage, it being recited in the judgment that no order of sale should be issued until the 1st of March, 1915. Mrs. Miller was not made a party to this foreclosure suit.

On May 3, 1915, Hadsell and wife and the Hadsell Land Corporation filed suit to enjoin the sale of the land under an order of sale issued under the above-mentioned decree. It was alleged as the basis of this bill for injunction that the Weils had agreed with Hadsell not to sell the land under the judgment prior to the first Tuesday in September, 1915, unless it could be sold for such a price as would pay off the judgment and leave a surplus for Hadsell and the Hadsell Land Corporation; that, acting upon this promise, Hadsell and the Hadsell Land Corporation had advertised the land for sale and spent large sums of money in an effort to sell it, and they asked for an injunction restraining the sale prior to September, 1915. Temporary injunction was granted on May 4, 1915.

On the 11th day of May, 1915, Mrs. Miller filed this suit against the Weils and others to set aside the aforesaid judgment of foreclosure in so far as it affected the 729-acre tract claimed by her. In her petition she alleged, among other things, that she and her husband had purchased said 729-acre tract from Hadsell and wife with the understanding and agreement that the land was free from all incumbrances, that at the time of such purchase neither she nor her husband had any knowledge of the existence of the Weil mortgage, and that she had no knowledge of the existence of the same until long after the rendition of the said foreclosure decree; that although she had purchased said land and was in possession of the same long prior to the filing of the foreclosure suit, she was not made a party thereto by the Weils; that she had valid defense against said foreclosure, in that the note for $11,000, to secure which the foreclosed mortgage was given, had been paid off by Hadsell prior to the filing of said foreclosure suit and rendition of the foreclosure judgment, and therefore no such lien existed on said land at that time or at any time since in favor of the Weils; that the Weils had actual and constructive knowledge of the purchase of the land by Miller and the whole matter relative to such sale; that they acquiesced in the sale to Miller and profited thereby, in that the cash payment of $4,600 made by Miller was paid by Hadsell to the Weils, and further that after Hadsell had been placed in possession of the Ohio property by Miller as a part of the consideration for the Texas property he mortgaged said land to the Weils.

The effect of the last plea was that the Weils encouraged the sale of the 729-acre tract to Miller and reaped benefits therefrom, and therefore are estopped to foreclose their mortgage on said 729 acres even if such mortgage was still unsatisfied. And again, in effect, she alleges that the bringing of the foreclosure suit by the Weils and the entry of the agreed judgment in said suit was a fraudulent scheme entered into between C. E. Hadsell and the Weils to defraud her; that as a fact the "Weils were money lenders and speculators and drove Hadsell under their control, for extensive obligations, into

the commission of this fraud." She prayed that the mortgage involved be set aside and held of no force against her, and that the judgment of the court foreclosing said mortgage be also set aside and annulled in so far as it affects her.

The Weils answered by a general denial, made parties all persons holding under Mrs. Miller, which was by deed subsequent to suit, alleged that Hadsell's mortgage was duly filed for record; that he had agreed to the decree of foreclosure, and the decree had been regularly entered under the agreement; that they, the Weils, had sued out an order of sale, whereupon Hadsell and Hadsell Land Corporation had sued out an injunction alleging that Weils had promised that they would not sell the premises until the first Tuesday in September, 1915; that Weils had known nothing about the Miller transaction; that the Miller deed was not put on record until February, 1914. They denied that Hadsell ever paid off the mortgage or any amount thereon, and insisted upon enforcement of the decree of foreclosure, but, in the alternative, in order to preclude Mrs. Miller, prayed for another foreclosure, and that their mortgage again be foreclosed.

Hadsell and wife and Hadsell Land Corporation answered by the general issue.

The plaintiff Mrs. Miller and the new defendants, Townsend, Quin, Wilson, Dabney, King, Bowersox, and Gaudern, who claimed liens on the 729-acre tract under contract with Mrs. Miller, and who are made parties defendant by the Weils, traversed the answer of the Weils, and the new defendants also adopted the pleading of Mrs. Miller. The National Bank of Ft. Wayne disclaimed.

The court submitted the case upon special issues, charging that the burden of proof was upon Mrs. Miller to show that the mortgage had been paid off in whole or in part, and propounded the following questions:  ·

"Has the mortgage to secure $11,000, executed by C. E. Hadsell, for the security of Weils, of date February 15, 1910, been paid off by Hadsell, in full, to Weils? Answer this question 'Yes' or 'No.'

"If you answer 'Yes' to the preceding question, do not answer either of the following questions; but if you have answered 'No' to the preceding question, then answer the following question, to wit:

"Question No. 2. Did Hadsell pay off any part of said mortgage referred to in question No. 1, other than the interest thereon to December 1, 1912? Answer this question 'Yes' or 'No.'

"If you have answered 'No' to question No. 2, then you need not answer the following question; but, if you have answered 'Yes' to question No. 2, then answer the following question, to wit:

"Question No. 3. When and in what amount, or amounts, did Hadsell make such payment, or payments, if any, on said mortgage?

"You will answer this question by stating the amounts, if any, and the dates of such pay-

215 S.W.—10

ments, if any, as near as you can approximately state them, or state that such payment, or payments, if any, were made at some date 'not later than' some approximate date."

The jury answered question No. 1, "Yes."

Upon the answer of the jury that the mortgage given to secure said $11,000 note had been paid off in full by Hadsell, the court rendered judgment in favor of Mrs. Laura Miller against the Weils and all other adverse defendants for the title and possession of the 729-acre tract and the land herein called the Findley tract.

It was also decreed by the judgment of the court that the decree entered in the suit of the Weils against Hadsell and wife foreclosing their said mortgage, in so far as it affects the 729-acre tract claimed by Mrs. Miller and those claiming under her, be set aside and annulled; and it was further decreed that the amount due the Weils on the $11,000 note, executed and delivered by Hadsell to them, be established at the sum of $16,107.25 as against the Hadsells, Hadsell Land Corporation, W. W. Wyrick, and John Wilding, and that as against said parties their mortgage lien be foreclosed on all the Colorado county land covered by their mortgage not herein adjudged to Mrs. Miller and those claiming under her.

From the judgment rendered the Weils only have appealed.

By the first, second, and third assignments, presented as a group, it is insisted, first, that there was no evidence to support the finding of the jury that the mortgage was paid off; second, that the undisputed evidence showed that the mortgage indebtedness of $11,000 had not been paid in full by Hadsell; and, third, that there was no evidence upon which the finding of the jury could have been made, other than the testimony of C. E. Hadsell, and this testimony was too indefinite, uncertain, conflicting, and inconsistent to justify the finding of the jury that said mortgage note had been paid by Hadsell.

[1] These assignments only challenge the sufficiency of the evidence to support the jury's finding of a question of fact. If there is room for difference of opinion between reasonable men as to the inference or conclusions which might be drawn from the evidence, then this court should not and will not disturb the findings of the trial jury, even though it might have made a different finding on the evidence adduced upon the trial.

[2] While it is true that the evidence tending to support the finding of the jury that the mortgage indebtedness of $11,000 had been paid off by Hadsell is weak, and while it is also true that the testimony of Hadsell given upon the trial is inconsistent with and contradicted by statements made by him at another time and place while under oath relative to the same subject-matter, and is weakened by certain dealings between him and the Weils relative to the mortgage note,

we would not be justified in holding that the evidence as a whole is insufficient to support the findings of the jury.

Clarence J. Sanger testified in substance that he had been employed by Hadsell as his principal man in Hadsell's real estate office at Ft. Wayne; that Hadsell used borrowed money; that he was with Hadsell from 1904 until January, 1910, and from the spring of 1911 until through the greater part of February, 1913; that Hadsell did not keep regular books, but a somewhat unsystematic personal record, in which this transaction might not have been entered; and that he, witness, was as familiar with Hadsell's transactions as Hadsell, both residing in Ft. Wayne, Ind.; that he knew Abraham and Isaac Weil, also of Ft. Wayne, large capitalists, dealers in wool, junk, and money lenders, and often lending Hadsell money, witness looking after these large loans along with Hadsell. Witness negotiated the sale to Miller and wife, and induced Miller to make a trip to Texas, and showed him the Colorado county lands and others, in December, 1912, the sale being closed in January, 1913, about the middle of the month. Witness had heard of two mortgages on the land sold to Miller, the Weil mortgage and the Findley mortgage. The Weils knew all about the Findley mortgage and also about the Miller purchase. Witness told Weil brothers that Miller was a prospective buyer; and that, if sale was made to him it would be the means of other sales; and that, after witness took Miller to Texas, both he and Hadsell explained to Weil brothers the prospect of doing business. Continuing, he said: "After we had arranged a definite meeting with Mr. Miller, we told Messrs. Weil Brothers of this fact," explained the proposed transaction with Miller to them, as it was an unusual effort. The deal was closed with Miller and some money paid in cash, and "we advised Messrs. Weil Brothers to that effect immediately."

Continuing, he testified in substance that the whole Findley lien matter was explained to them, it being necessary to dispose of that matter and to handle that lien because the Findley land was included in the sale to Miller, and all of this was taken up with Weils, the Weils agreeing to carry the Findley lien; that Miller paid about $175, Hadsell agreeing to deposit the Miller note, Miller executing an escrow transaction, to be security for Weils, and Hadsell paying Weils $400 extra (bonus) in order to get them to carry the Findley notes; that there was a written agreement with Miller, introduced in evidence (a carbon original duplicate being handed to the witness, which he identified). It recites payment of $175, dated January 14, 1913, and provides that document was to be held in escrow in the First National Bank of Ft. Wayne, and all signed up in witnesses' presence, being agreement between the Hadsell Land Corporation and Miller for the purchase and sale of the land. Attached to the agreement was a note executed by Miller for $2,365, payable on or before 60 days; note being figured with the $175 cash would be approximately the amount of the Findley loan and interest, and all delivered in escrow to the bank. Weil brothers were told of the note; that the note derived from Miller was offered Weils as collateral for their advance on the Findley transaction, and they were told in regard to the consideration that Miller was to give for the Colorado county land, and they were told "the details of the transaction," which included the conveyance to Hadsell of the Ohio land owned by Miller and wife; that as to the $11,000 mortgage herein involved, held by Weils, it was settled before the closing of the Miller deal, for which an executory contract was placed in escrow, "I was in contact with the transaction between Hadsell and Weils." Witness said that he did not see it paid, but he knew it was arranged because Weils raised no question about it; that in various loans from Weils the consideration had been interest and bonuses, the money loaned being paid over to Hadsell in cash by Weil brothers, who kept books and sometimes gave receipts for cash payments made to them by Hadsell; Weils said nothing of the $11,000 note and mortgage when the Miller matter was being closed up, and the land originally included in that mortgage being sold to Miller; that witness knew of all of the money transactions between Hadsell and Weils; that Weils did not demand payment of the $11,000 mortgage at the time of the sale to Miller; and that Weils never brought it up, and joined in putting through the Miller transaction, Hadsell saying to witness that it was paid off, the $11,000 mortgage then being considered a thing of the past; that Weils were prominent in business and wealthy, but Abraham's reputation as to truth and veracity was and still is bad, and witness would not believe him on oath, especially if a gain for Weil brothers was involved; and the witness had the same opinion of Isaac; that all settlements on account of Hadsell passed through his hands; but that he left the service of Hadsell after the executory contract for the Miller transaction was put in the bank in January, and therefore was not in contact with payment of money upon the consummation of the transaction by Miller, and had no direct knowledge of that matter, or of the final conveyance by Miller and wife to Hadsell of the Ohio lands.

On cross-examination he said that various payments, on different dates, had been made to Weil brothers, sometimes in cash; that his understanding was that the $11,000 mortgage had been paid off; that he did not personally pay Weils the $11,000 mortgage, nor did Hadsell in his presence; that he, not at

Hadsell's request, had discussed with Weils recently the making of a loan on Hadsell's Michigan lands, Hadsell proposing to get rid of this litigation in that transaction; that at least $1,500 of the mortgage in question was held back by Weils as a commission when the loan was made. Hadsell dealt with Weils, though men of tarnished reputation, because they had plenty of money, and they were sometimes the only people from whom he could get it, and affairs went so far with Weils that they were "finally carried to a point where it was impracticable for him to attempt to get the loan elsewhere."

On redirect interrogatories Sanger said that, when renewals were made, Weils usually charged bonuses; that they had refused Hadsell's checks and demanded the cash, and kept him tied up most of the time; that Isaac Weil came to see him recently in Detroit and asked him there about witnesses in this case, and whether there was any one in Detroit "who had it in for Mr. Hadsell." He was soliciting testimony.

Plaintiff introduced deposition of Hadsell, who stated that he owned the Texas lands, including the Findley land; that he first gave a mortgage for $25,000 on it, and afterwards $11,000 mortgage, now in litigation, covering 1,200 acres, including part of the land sold to Miller; that he paid the $11,000 mortgage by payments at different times in cash, one payment prior to the sale to Mr. Miller and others afterwards, in all the amount of the $11,000 mortgage and the lien on the Findley land conveyed to Miller; Weils executed no release, although witness had applied to them for it, which they refused to give him, or made evasive answers not only as to this, but as to land in Oklahoma; that they knew of the sale to Miller; that he told them about it and obtained a release of the Findley lien; that he told them he had taken partly in exchange Ohio lands; that they promised to see about the releases; that he told them one of the Ohio farms was highly improved and details about it; and he told them where cash came from, to wit, from Miller, with which he paid off the Findley lien; Miller finally paid him in cash about $4,500, and witness said, "I think I paid the entire amount of this $4,500 to Weil brothers"; that he discussed the transaction with them that he had with Miller, and told them what lands he had sold Miller; that he told them about it and obtained a release of the Findley lien; that he told them he had taken partly in exchange Ohio lands; that they knew he was hard pressed; that he talked matters over with them fully, and told them that the land sold to Miller was to be free of incumbrances; that they had been crowding him very hard; that not a cent is now due to the Weils on the mortgage sued on.

On cross-examination he said that Weils, when they accepted mortgage on the Ohio lands, knew that he had gotten it from Miller in part consideration for the Texas lands; that Weils had sued him to foreclose mortgage in question; that Miller had died in the fall of 1913; witness was at the funeral; and that witness had told Townsend at the time, in the presence of Rosenberg (Weils' bookkeeper) and Weil, in Townsend's office, that he did not owe this mortgage.

Mrs. Miller testified that Hadsell was a second cousin of her husband, and that she knew him and Sanger; that she and her husband lived on the Ohio lands, being farmers, which they conveyed to Hadsell in part consideration for the Texas lands; they were free from liens, improved and as good as the best in the neighborhood, land selling in that neighborhood for $85 to $150 an acre; Sanger came to see her husband about this transaction; that she remembered the day when the deed was executed by her husband, at the Allen Hotel, Montpelier, Ohio, nine miles from her home. Hadsell delivered his deed, and she and her husband delivered to Hadsell deed to their Ohio property, they giving Hadsell abstract, but he furnishing no abstract, which he claimed to have mislaid.

Witness and her husband lived on the Ohio land until the 5th of November, 1913, when they came down to Rock Island, in Colorado county, Tex., near which their land was. They have children. They made preparations to build on the land, but Mr. Miller died on the 18th of November in Texas, about ten days after he reached Texas; Mrs. Miller took his body back to Ohio for burial, and got back to Rock Island on the 23d of December, 1913, during a time of floods, her oldest son coming with her. About five days before she and her husband started for Texas, in November, 1913, an abstract of the land was given them, but neither she nor her husband, so far as she knew, read it. She has a tenant in possession of the land, who pays rent to her.

Walker, the tenant, testified that he had rented the land from Hadsell first, and afterwards, when the Millers bought, from them, and that he has remained in possession of the pasture, there being 2,500 acres in it, up to last spring, when 1,100 acres were fenced separately; boundary fences were maintained and witness commenced to rent from Miller when he ceased to rent from Hadsell.

In 1915, long after the sale of the Colorado county land to Miller, C. E. Hadsell was called as a witness in the case of New Werner Company v. Hadsell Land Corporation, pending in the superior court of Allen county, Indiana. Counsel for the Werner Company, by questions propounded, was trying to draw from the witness Hadsell an admission that the Hadsell Land Corporation was solvent,

and that the $11,000 mortgage note involved in this suit had been paid. Hadsell, for some reason not apparent from the record before us, was resisting its effort on the part of counsel. The testimony given by Hadsell in that case was taken by Miss Ritter, the court stenographer, and her stenographic notes of such testimony had been by her transcribed. Miss Ritter was brought by the Weils to Texas, and offered as a witness in this case to testify as to the testimony given by Hadsell in that case. After she had properly qualified and had identified the transcribed copy of Hadsell's testimony in the New Werner case, she was asked by counsel for the Weils to give the answers of Hadsell to certain questions relative to the payment or nonpayment of the said mortgage note and about many other matters relative to the business affairs of the Hadsell Land Corporation and himself. Whereupon counsel for Mrs. Miller in this case urged some objection, as shown by the statement of facts, the nature of which, however, is not shown. It is further shown by the statement of facts that upon such objection being made Mr. Logue, counsel for Weils, stated that the evidence was offered for the purpose of contradicting Hadsell, and as an admission of Hadsell's, as a party to this suit, respecting the mortgage note. It further appears from the statement of facts that at this point the jury was retired, and that the court overruled the objections urged. Thereupon Mr. Logue, counsel for Weils, made this statement:

"Let the stenographer take this down, that the evidence is not offered for the purpose of impeaching the testimony of Hadsell given in his deposition, for reason, as counsel has stated, that it could not be offered for the purpose of impeachment without laying the predicate, but it is offered as against Hadsell, the party, and the Hadsell Land Corporation, the party, as admissions and as original testimony; and it is not to be taken as evidence against Mrs. Miller."

Mr. Dabney (counsel for Mrs. Miller): "I have written out what I think should be read to the jury." (Submitted to Mr. Logue and agreed to.)

The jury was then returned. The court then instructed the jury as follows:

"Gentlemen of the jury, before this witness testifies it is desired on the part of counsel, and agreed to, that the jury be instructed as follows: That the jury are instructed that the testimony is not admitted against Mrs. Miller, the plaintiff, but is admitted against Hadsell and wife, and the Hadsell Land Corporation, and Wilding."

After the court had so instructed the jury, Miss Ritter, among much other matter not necessary to here state, testified by reading from her notes that Hadsell in the New Werner case had testified that Weils held a mortgage on the Colorado county land known as the "Rock Island" for the sum of $11,000; that this mortgage covered the land sold to Miller; that he could not say exactly how much had been paid on this mortgage, but he thought about $500 on the interest only, but later testified that his books showed a credit of $3,675.02 on said note; that about the time he traded with Miller the Weils were pressing him, and that it was through the sale to Miller he was enabled to pay them money; that he got $4,600 in cash from Miller; that in May, 1915, after he sold to Miller, he paid the Weils $36,000; that about this time the Weils were pressing him hard, and that the sale to Miller helped to pay off his indebtedness; that the reason he did not pay off the mortgage in question, as he paid other mortgages, was because, first, he did not have the money, and, second, because at that time the Weils were making unjust claims against him, which he did not owe, and on being asked if this statement referred to the $11,000, if there was any part of that item wrong, he answered that he referred to all of the Weils' claim, but he had made up his mind that he would not question the amount claimed by Weils to be due on this note; that the Weils would not accept settlement on the basis of what he claimed he owed them; that on being asked if it was not his understanding and Weils' understanding that Miller was to get his land free at the time he paid Weils $32,000 in May, 1913, and that the mortgage on Miller's land was to be canceled and paid and the title to Miller's land cleared, he answered: "Mr. Miller was to buy 1,404 acres of land free and clear, and in order to do that had to pay off this Weil mortgage."

After the above testimony of Miss Ritter was given by reading from her transcribed notes, together with much other, the entire transcript was offered in evidence by counsel for Mr. Miller, and its introduction was agreed to by counsel for all parties.

It must be, and no doubt will be, conceded by appellants that the facts and circumstances shown by the testimony of Sanger and Hadsell on the trial of the case, standing alone, is of sufficient probative force to support the finding of the jury. But it is insisted that the fact that Hadsell agreed that judgment might be taken against him on the mortgage note and a foreclosure had on the land covered by the mortgage long after the sale of a portion of the land to Miller, and the fact that Hadsell testified in the trial of the New Werner case to facts in conflict with his testimony given in this case relative to the payment of the mortgage note, and in view of other conduct of Hadsell relative to the mortgage indebtedness which was inconsistent with and tended to refute his testimony that said debt was paid, absolutely destroyed the probative force of his testimony that the mortgage had been paid

off; and that aside from his testimony there was no evidence to support the finding of the jury upon which the judgment for Mrs. Miller is based.

As heretofore stated, we think there was sufficient evidence to justify the trial court's action in submitting the question of payment of the mortgage note to the jury, and to support the finding of the jury that it was paid, notwithstanding the fact that Hadsell's testimony was in some respects contradictory and inconsistent with some of his acts relative to said note, and notwithstanding the fact that his testimony and that of Sanger was contradicted by the testimony of Isaac Weil and Leo Rosenberg, both of whom were impeached generally and by proof of impeachable acts relative to the subject-matter of the suit, and also by other witnesses (Choate v. Railway Co., 90 Tex. 82, 36 S. W. 247, 37 S. W. 319; Sellars v. Railway Co., 33 Cal. App. 701, 166 Pac. 599), nor do we think the fact that Hadsell testified as a witness in the New Werner case to facts seemingly in direct conflict with his present testimony regarding the payment of the note entirely destroyed the probative force of his testimony in this case. Railway Co. v. Due, 166 S. W. 918; Railway Co. v. Hugen, 45 Tex. Civ. App. 326, 100 S. W. 1000.

[3] The fact that Hadsell testified differently in the New Werner case in reference to the subject-matter of the present suit did not affect the competency of his testimony, though no doubt it was a matter for the consideration of the jury as to the effect to be given his testimony.

In the case of Railway Co. v. Due, supra, Chief Justice Pleasants, speaking for this court, said:

"Appellant contends that upon a former trial of the case appellee testified that, when he passed the engine, the fireman was in the gangway between the engine and the tender, and that appellee is bound by his former testimony, and will not be permitted to contradict it and place the fireman in a different position, and that under the former testimony of appellee the position of the fireman was such that he could not have seen appellee on the track in front of the engine; and therefore the issue of discovered peril is. not raised. * * *

"If it be conceded that he did state on the former trial that the fireman was in the gangway, it was a question for the jury to determine from all the evidence whether his statement upon this or the former trial was correct, and there is no rule of estoppel which would prevent the jury from accepting as true the statement made on the last trial, especially as that statement is corroborated by other evidence."

In Sellars v. Railway Co., cited above, it was held that, even if there were material inconsistencies between the testimony of the plaintiff on direct and on cross examination, the jury might accept the statements made during the course of the former and reject those of the latter. Such is the rule imposed upon the jury by law.

We have also reached the conclusion, after a careful reading of the entire testimony of Hadsell in the New Werner case, that his statements then made fell far short of an unequivocal and positive statement that the mortgage note had not been paid. There are to be found in such testimony many expressions indicating that he was "dodging" as expressed by counsel for Mrs. Miller, and from which it might be concluded by the trial court and jury that Hadsell had paid Weils money for the purpose of paying off the mortgage note, and that such money had been placed as credit upon other indebtedness due by Hadsell to the Weils, against Hadsell's instructions to place it as a credit on the mortgage note.

The effect of the fourth assignment is that the court erred in submitting to the jury the issue of the payment of the mortgage note, in that, barring the testimony of C. E. Hadsell, there was absolutely no evidence to justify the submission of said issue to the jury, and the plaintiff Mrs. Miller offered in evidence the deposition of Hadsell in this case, in which he swore that said mortgage note had been paid off, and that she also offered in evidence the sworn testimony of Hadsell given in the New Werner case, wherein Hadsell swore that said note had not been paid, thus showing that his evidence on the two occasions mentioned were conflicting and inconsistent and one or the other of them of necessity false, and there was therefore nothing in the evidence to justify the submission of the issue of payment.

Appellants' contention under this assignment is: First, that as the plaintiff offered the transcript of Hadsell's testimony taken in the New Werner case in Ft. Wayne, Ind., she is bound by it; and since it conclusively establishes by the oath of Hadsell that he had not paid this note and discharged this mortgage, the court should have either peremptorily charged the jury to that effect, or set aside the judgment upon the appellants' motion for new trial; and, second, that—

"Even if it cannot be successfully said that the appellee is bound by the testimony of Hadsell contained in the transcript of the New Werner case and offered by her counsel, yet by offering it she has so thoroughly contradicted and impeached Hadsell that his testimony becomes unworthy of belief, and under these circumstances cannot be made the basis of a judgment establishing payment of the note in question."

[4, 5] These contentions cannot be sustained: First, because we do not agree with the contention that the introduction by Mrs. Miller of the transcript of the testimony of Hadsell in the New Werner case at the time and under the existing circumstances as set out had the effect to estop her from asserting

the truth of the testimony upon the trial of the present case. Hadsell was an adverse party to Mrs. Miller in the present case. It is evident that the portion of the testimony of Hadsell in the New Werner case tending to refute the contention of Mrs. Miller that the mortgage note had been paid had been practically placed before the jury by the evidence of Miss Ritter, and that counsel for Mrs. Miller insisted on the introduction of the whole of the transcript so that the jury might determine therefrom just what Hadsell did swear to in the New Werner case as to the payment or nonpayment of the mortgage note; and, second, we do not think the testimony of Hadsell in the case mentioned amounts to an unequivocal statement that the note was unpaid, for there are expressions found therein that would authorize the jury in concluding that Hadsell had paid the Weils money sufficient and for the purpose of extinguishing the mortgage indebtedness here involved, and that Weils had applied the money so paid to other purposes.

The fifth assignment is overruled, for reasons stated in the discussion under the assignments already disposed of.

By the sixth and seventh assignments it is insisted that the burden of proving, by a preponderance of the evidence, that the mortgage note involved in this suit was paid was upon the plaintiff Mrs. Miller; that such burden has not been discharged, but, on the contrary, by the great weight and preponderance of the evidence, it has been shown that said note had not been paid and therefore the finding of the jury that the note had been paid is, under all the facts and circumstances in the case, manifestly wrong.

We realize that the testimony to support the findings of the jury that the note had been paid is very much weakened by certain acts of Hadsell relating to his dealings with the Weils, but when we look to the rebuttal testimony offered by appellants to overthrow it, the substantial portion of which comes from the lips of Isaac Weil and Leo Rosenberg, both of whom were impeached both by their acts and by their neighbors, we do not feel justified in saying that the finding of the jury was manifestly wrong. We therefore overrule assignments six and seven.

[6] By the eighth assignment appellants insist that the court erred in submitting to the jury the question as to whether the mortgage note had in part been paid, and, if so, what part, because there was not evidence justifying the submission of such questions.

If the action of the court in this regard could have been error, it became harmless in view of the finding of the jury in answer to question No. 1 that the note had been paid in full.

What we have already said disposes of all of the assignments of appellant.

[7] By cross-assignments appellee Mrs. Miller insists that the court erred in refusing to submit to the jury, at her special written request, the following questions:

First. Did, or did not, the Weils know of the sale of the land by Hadsell to Miller before its consummation March 14, 1913?

Second. If they did so know, did they, or either of them, aquiesce or stand by during its consummation?

Third. If they did acquiesce or stand by, did they, or either of them, participate in the transaction?

Fourth. If they, or either of them, knew of the sale before its consummation, then were any of its proceeds paid by Hadsell to Weils, or either of them?

Appellee, Mrs. Miller, pleaded estoppel, and the evidence, we think, required the submission of that issue to the jury; therefore the refusal of the questions requested was error. Luther v. Rose, 20 Tex. 648; Larkin v. Wilsford, 29 S. W. 548; Wright v. Leonard, 183 S. W. 782. Appellee Mrs. Miller, however, is not asking for a reversal of the judgment rendered because of such error.

[8, 9] We decline to consider the cross-assignments found in the brief of appellees C. E. Hadsell and the Hadsell Land Corporation, which are presented for the first time in this court. They have not appealed from the judgment rendered. Neither of these parties pleaded payment of the mortgage note, and therefore no judgment could have been properly rendered for these appellees. A judgment having no pleading to support it cannot stand. But should we consider the cross-assignments we would overrule them for the reason that it is shown by the undisputed evidence that Weils brought suit against C. E. Hadsell, in whom the title to the land mortgage stood, to foreclose their mortgage in 1913; that in that suit Hadsell agreed to the rendition and entry of a judgment foreclosing the Weils mortgage on the land now claimed to be free from said mortgage. The judgment so rendered and entered was not appealed from, nor has it been set aside and annulled by any court as against Hadsell, nor could it have been so set aside and annulled under the pleadings of either Hadsell or the Hadsell Land Corporation.

We find no such error in the trial of this cause in the lower court as should cause us to reverse the judgment there rendered; therefore such judgment is affirmed.

Affirmed.